UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HEIDI BRUCE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:15-cv-0353-D |
| | § | |
| ANTHEM INSURANCE COMPANIES, | § | |
| INC., d/b/a ANTHEM BLUE CROSS | § | |
| AND BLUE SHIELD, and VERIZON | § | |
| EMPLOYEE  BENEFITS COMMITTEE, | § | |
| | § | |
| Defendants. | § | |

**<u>PLAINTIFF'S MOTION TO COMPEL DISCOVERY FROM VEBC,
AND BRIEF IN SUPPORT</u>**

James L. Johnson
Texas Bar No. 10742020

THE JOHNSON LAW FIRM
6500 Greenville Avenue
Suite 345
Dallas, Texas  75206
Telephone:    214/363-1629
Telecopier:   214/363-9173
Email: jamesljohnson@covad.net

ATTORNEY FOR PLAINTIFF
HEIDI BRUCE

**TABLE OF CONTENTS**

TABLE OF CONTENTS.. . . . . . . . . . . . . . . . . . . . .  ii

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . iii

I.   INTRODUCTION.. . . . . . . . . . . . . . . . . . . . . . 1

II.  FACTUAL BACKGROUND OF BRUCE'S CLAIMS, AS PLEADED.. . . . . 2

III. DISCOVERY IN A CIVIL ACTION UNDER ERISA. . . . . . . . . . 4

    A.   Bruce's Claim for Penalties.. . . . . . . . . . . . . 4

    B.   Bruce's Claim for Benefits. . . . . . . . . . . . . . 5

        1.   Procedural Requirements for a
             "Full and Fair Review," and
             Effect of Procedural Irregularities. . . . . . . 6

        2.   Conflict of Interest.. . . . . . . . . . . . . . 7

        3.   Interpreting the Plan or Explaining
             Medical Terms or Claim Procedures. . . . . . . . 8

IV.  REQUESTS FOR PRODUCTION. . . . . . . . . . . . . . . . . . 8

    A.   VEBC's Meritless Objections.. . . . . . . . . . . . . 9

        1.   Request for Production 4.. . . . . . . . . . . . 9

        2.   Request for Production 9.. . . . . . . . . . . . 9

        3.   Request for Production 10, 28, 29, 30. . . . . . 10

        4.   Request for Production 31. . . . . . . . . . . . 12

        5.   Request for Production 33. . . . . . . . . . . . 13

        6.   Requests for Production 35, 36, 37.. . . . . . . 15

    B.   VEBC's Failed Promises
         to Produce Responsive Documents.. . . . . . . . . . 16

    C.   Relief Requested. . . . . . . . . . . . . . . . . . 18

V.   INTERROGATORY. . . . . . . . . . . . . . . . . . . . . . 19

    A.   Bruce's Interrogatory and
         VEBC's Meritless Objections.. . . . . . . . . . . . 19

B.   Relief Requested. . . . . . . . . . . . . . . . 20

VI.  REQUESTS FOR ADMISSION.. . . . . . . . . . . . . . 20

A.   VEBC's Meritless Objections.. . . . . . . . . . 21

1.   Requests for Admission 22, 23. . . . . . . . 21

2.   Requests for Admission 27, 29. . . . . . . . 21

3.   Request for Admission 35.. . . . . . . . . . 22

4.   Request for Admission 72.. . . . . . . . . . 23

5.   Requests for Admission 77, 78. . . . . . . . 23

6.   Requests for Admission 82, 83. . . . . . . . 24

B.   Relief Requested. . . . . . . . . . . . . . . . 25

CERTIFICATE OF CONFERENCE.. . . . . . . . . . . . . . . 26

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . 26

**TABLE OF AUTHORITIES**

**Case**                                                              **Page**

Bartling v. Freuhauf Corp.,
    29 F.3d 1062, 1067-69 (6th Cir. 1994). . . . . . . . . . . 5

Bruce v. Anthem Ins. Cos.,
    2015 WL 1860002 (N.D. Tex. Apr. 23, 2015)(Fitzwater, J.).. 2

Bruce v. Anthem Ins. Cos.,
    307 F.R.D. 465 (N.D. Tex. 2015)(Toliver, Magistrate J).. . 2

Bussian v. RJR Nabisco, Inc.,
    223 F.3d 286 (5th Cir. 2000).. . . . . . . . . . . . . . . 6

Crosby v. Louisiana Health Serv. & Indem. Co.,
    647 F.3d 258 (5th Cir. 2011).. . . . . . . . . . . . . 6, 7

Forbau v. Aetna Life Ins. Co.,
    876 S.W.2d 132 (Tex. 1994).. . . . . . . . . . . . . . . 12

House v. Giant of Maryland, LLC,
    232 F.R.D. 257 (E.D. Va. 2005).. . . . . . . . . . . . . 23

Jackson v. Truck Drivers' Union
    Local 42 Health 7 Welfare Fund,
    933 F. Supp. 1124 (D. Mass. 1996). . . . . . 12, 13, 19, 24

Kergosien v. Ocean Energy, Inc.,
    390 F.3d 346 (5th Cir. 2004).. . . . . . . . . . . . . . 7

LaFleur v. Louisiana Health Serv. & Indem. Co.,
    563 F.3d 148 (5th Cir. 2009).. . . . . . . . . . . . . . 1

Lampkins v. Golden,
    1996 WL 729136 (6th Cir. 1996).. . . . . 5, 12, 13, 14, 19, 24

Metropolitan Life Ins. Co. v. Glenn,
    128 S. Ct. 2343 (2008).. . . . . . . . . . . . . . . . 6-7

Romero v. SmithKline Beecham,
    309 F.3d 113 (3rd Cir. 2002).. . . . . . . . . . . . . . 5

Vega v. National Life Ins. Servs., Inc.,
    188 F.3d 287 (5th Cir. 1999)(en banc). . . . . . . . . . 8

Wildbur v. ARCO Chem Co.,
    974 F.2d 631 (5th Cir. 1992).. . . . . . . . . . . 8, 14, 20

**Statutes and Regulations**                                        **Page**

29 U.S.C. § 1001. . . . . . . . . . . . . . . . . . . . . . . . . 1

29 U.S.C. § 1022(21)(A). . . . . . . . . . . . . . . . . . . . . 6

29 U.S.C. § 1024(b)(4). . . . . . . . . . . . . 4, 9, 10, 12, 14

29 U.S.C. § 1132(a). . . . . . . . . . . . . . . . . . . . . . . 4

29 U.S.C. § 1132(a)(1)(A). . . . . . . . . . . . . . . . . . . . 1

29 U.S.C. § 1132(a)(1)(B). . . . . . . . . . . . . . . . . . . . 1

29 U.S.C. § 1132(c). . . . . . . . . . . . . . . . . 1, 5, 9, 10

29 U.S.C. § 1133(2). . . . . . . . . . . . . . . . . . . . . . . 6

29 C.F.R. § 2575.502c-1. . . . . . . . . . . . . . . . 1, 5, 18

**Rules**                                                          **Page**

Fed. R. Civ. P. 16(c)(2)(A). . . . . . . . . . . . . . . . . . 20

Fed. R. Civ. P. 16(c)(2)(C). . . . . . . . . . . . . . . . . . 20

Fed. R. Civ. P. 16(c)(2)(D). . . . . . . . . . . . . . . . . . 20

Fed. R. Civ. P. 26(b)(1). . . . . . . . . . . . 3, 5, 21, 22, 23

Fed. R. Civ. P. 26(b)(5)(A)(2). . . . . . . . . . . . . . 14, 19

Fed. R. Civ. P. 33(a)(2). . . . . . . . . . . . . . . . . . . 20

Fed. R. Civ. P. 36(a)(6). . . . . . . . . . . . . . . . . . . 25

Fed. R. Civ. P. 37(a)(3)(B)(iii). . . . . . . . . . . . . . . 20

Fed. R. Civ. P. 37(a)(3)(B)(iv). . . . . . . . . . . . . . . . 18

Fed. R. Civ. P. 37(a)(4). . . . . . . . . . . . . . . . . . . 25

Local Rule 7.1(b)(2). . . . . . . . . . . . . . . . . . . . 2, 26

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW Heidi Bruce [hereinafter "Bruce"], Plaintiff herein, and would respectfully show the Court the following:

## I.   __INTRODUCTION__.

Bruce suffered from a herniated cervical disc at level C6-7. Surgery was performed on November 5, 2013, involving a total disc replacement at C6-7 with a Mobi-C prosthetic device.   Bruce incurred charges of $64,919.98 for such surgery.   Bruce sought medical benefits available under a plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. [hereinafter "ERISA"].   Benefits were denied.

Bruce filed this lawsuit against Verizon Employee Benefits Committee [hereinafter "VEBC"], as plan administrator, and Anthem Insurance Companies, Inc., d/b/a Anthem Blue Cross and Blue Shield [hereinafter "Anthem"], as claims administrator.   Bruce seeks two forms of relief.   First, Bruce is entitled to recover certain benefits under 29 U.S.C. § 1132(a)(1)(B).   Second, VEBC should be ordered to pay Bruce $110 per day in penalties under 29 U.S.C. § 1132(c) and 29 C.F.R. § 2575.502c-1 for failure to provide plan documents that she requested.   Penalties under section 1132(c) are actionable under 29 U.S.C. § 1132(a)(1)(A).

As raised in Bruce's pleading [hereinafter "Complaint," ECF Doc. 1, at ¶¶ 97, 117, 123], courts are wary of procedural violations as a means of "sandbagging" a claimant seeking benefits under ERISA, as Defendants did in the pre-suit phase.   See LaFleur v. Louisiana Health Serv. & Indem. Co., 563 F.3d 148, 160 (5th Cir.

2009).  Defendants continued their sandbagging even after suit was filed.  First, Defendants failed to admit or deny certain allegations in the Complaint, a position that the Court generally found to "border on the frivolous."  Bruce v. Anthem Ins. Cos., 2015 WL 1860002, at *2 (N.D. Tex. Apr. 23, 2015)(Fitzwater, J.).  Second, Defendants failed to provide initial disclosures until ordered to do so.  Bruce v. Anthem Ins. Cos., 307 F.R.D. 465 (N.D. Tex. 2015)(Toliver, Magistrate J.).

VEBC has continued its sandbagging by failing to provide certain discovery that Bruce requested.  Bruce notified VEBC (in writing) of the specific responses to Bruce's requests that were deficient, and tried to confer with VEBC to determine whether agreement could be reached on those requests (or, if not, then why not) pursuant to Local Rule 7.1(b)(2).  VEBC selected a date and time for the conference.  At that time, VEBC stated only that it "will look at" the first few requests, then unilaterally terminated the call (over Bruce's vocal objections) without discussing the many requests that remained.  After a week with no further discovery from VEBC, it is clear that VEBC is once again refusing to satisfy its duties unless ordered to do so by the Court.

Bruce now seeks to compel relevant documents and information from VEBC.  This motion is supported by the documents contained in the accompanying appendix, cited in the form "Bruce Apx. ##."

## II.  FACTUAL BACKGROUND OF BRUCE'S CLAIMS, AS PLEADED.

Bruce "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P.

26(b)(1).  The scope of discovery, therefore, is determined from the claims set forth in Complaint.

Bruce pleaded that Anthem, acting on behalf of VEBC, improperly denied benefits.  (Complaint at ¶ 5.)  The adverse benefit determination was expressed in a letter from Anthem UM Services, Inc., acting on behalf of Anthem.  (Id.)

Bruce (through her attorney) asked VEBC by letter dated June 20, 2014 to provide, pursuant to its statutory duty as plan administrator, a copy of the applicable plan document, including the summary plan description ("SPD"), the summary of coverage ("SOC"), all contracts or other instruments by which Anthem served as the claims administrator, and all contracts or other instruments by which Anthem UM Services, Inc. had any responsibility for handling Bruce's claim.  (Complaint at ¶ 61.)

Bruce's request was delivered to VEBC on June 23, 2014, but VEBC failed to respond.  (Complaint at ¶ 62.)  Bruce (through her attorney) sent another letter dated August 30, 2014, which was delivered to VEBC on September 2, 2014. (Complaint at ¶ 63.)

VEBC provided an SPD on September 9, 2014 by email.[1] (Complaint at ¶ 64.)  The SPD explains, on page 1, that it applies "as of January 1, 2014."  (Id.)  It was not in effect, therefore, on November 5, 2013, the date of Bruce's neck surgery.  (Id.)  VEBC provided no SPD in effect on the date of that surgery.  (Id.)

The 2014 SPD explains on page 1 that medical benefits are

---

[1] The email indicated that it was from the "Verizon Benefit Center," but the sender's email address shows it was from "xerox.com."  The involvement of Xerox is addressed further in section IV.A.3 below.

governed by "The Plan for Group Insurance" and "The Verizon CHOICES Plan." (Complaint at ¶ 65.)  Page 47 of the SPD refers to them as "The official Plan documents." (Id.)  VEBC provided no such plan documents. (Id.)  In addition, VEBC did not provide any contracts or other instruments regarding the involvement of Anthem or Anthem UM Services. (Complaint at ¶ 68.)

VEBC provided a SOC that, on page 1, explains that it was "effective January 1, 2014." (Complaint at ¶ 66.)  The 2014 SOC was not in effect on November 5, 2013, the date of Bruce's surgery, and VEBC provided no SOC in effect on that date. (Id.)

By email on September 9, 2014, Bruce (through her attorney) advised VEBC of the documents that VEBC had failed to provide. (Complaint at ¶ 69.)  VEBC responded by email that day, stating that it would "get the documents" that Bruce had detailed. (Id.)

By email on October 2, 2014 and October 9, 2014, Bruce (through her attorney) reminded VEBC of her outstanding request. (Complaint at ¶ 70.)  VEBC never responded to either email, and, by the time suit was filed on February 4, 2014, never provided the many missing documents that Bruce had requested. (Id.)

## III. **DISCOVERY IN A CIVIL ACTION UNDER ERISA**.

Both of Bruce's claim fall within what ERISA describes as a "civil action." 29 U.S.C. § 1132(a).  Within that civil action, discovery is allowed on both of Bruce's claims, as discussed below.

### A. **Bruce's Claim for Penalties**.

The administrator of an ERISA plan is required by 29 U.S.C. § 1024(b)(4) to furnish, upon written request of any plan

participant, any "contract, or other instruments under which the plan is . . . operated."  Under 29 U.S.C. § 1132(c)and 29 C.F.R. § 2575.502c-1, the plan administrator may be ordered to pay $110 per day for failing to provide any such document.  Such penalties may be awarded "in the court's discretion."  29 U.S.C. § 1132(c).

Each violation "shall be treated as a separate violation." Id.  The penalty may be imposed on a "per document" basis.  See Bartling v. Freuhauf Corp., 29 F.3d 1062, 1067-69 (6th Cir. 1994).

In applying its discretion, the Court may consider a number of factors, including (1) bad faith by the administrator, (2) the length of the delay, (3) the number of requests, (4) the documents withheld, and (5) the existence of any prejudice to the plan participant.  See Romero v. SmithKline Beecham, 309 F.3d 113, 120 (3rd Cir. 2002).  Prejudice is just one factor, because: "The purpose of the statutory penalty is not to compensate participants, but to induce administrators to expeditiously provide requested plan documents by punishing those who fail to comply."  Lampkins v. Golden, 1996 WL 729136, at *3 (6th Cir. 1996).  An administrator's "deliberate indifference" to the duty to provide documents may thus play an important part in an award of penalties.  See id. at *4.

These factors are "relevant to [Bruce's] claim."  Fed. R. Civ. P. 26(b)(1).  Bruce "may obtain discovery" regarding those five factors, therefore, because of that relevance.  Id.

**B.   Bruce's Claim for Benefits.**

Rule 26(b)(1) generally allows Bruce to obtain discovery relevant to her claim, and such relevant information "need not be

admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." These principles apply as well in cases seeking a recovery of benefits under ERISA.  <u>See</u> <u>Crosby v. Louisiana Health Serv. & Indem. Co.</u>, 647 F.3d 258, 262 (5th Cir. 2011).  The scope of discovery in ERISA cases can be outlined with a few authorities, discussed below.

     **1.**    **<u>Procedural Requirements for a "Full and Fair Review," and Effect of Procedural Irregularities</u>.**

Under ERISA, fiduciaries are those with "any discretionary authority or discretionary responsibility in the administration" of the ERISA plan.  29 U.S.C. § 1002(21)(A).  A fundamental duty of a fiduciary is a duty of loyalty to the beneficiaries.  "ERISA's duty of loyalty is 'the highest known to the law.'"  <u>Bussian v. RJR Nabisco, Inc.</u>, 223 F.3d 286, 294 (5th Cir. 2000).  The United States Supreme Court recently explained:

> ERISA imposes higher-than-marketplace quality standards . . . .  It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries of the plan, [29 U.S.C.] § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials."

<u>Metropolitan Life Ins. Co. v. Glenn</u>, 128 S. Ct. 2343, 2350 (2008)(citations omitted).

A fundamental requirement under ERISA is a "full and fair review."  29 U.S.C. § 1133(2).  The United States Supreme Court found that facts demonstrating "procedural unreasonableness" may be significant on the question of whether ERISA benefits have been

improperly denied.  <u>Glenn</u>, 128 S. Ct. at 2352.

The Fifth Circuit has accordingly held that discovery of "the completeness of the administrative record" and "whether the administrator complied with ERISA's procedural regulations" is "relevant and thus permissible" in an ERISA action.  <u>Crosby</u>, 647 F.3d at 263.  The court explained that it could "envision situations where evidence resolving these disputes may not be contained in the administrative record."  <u>Id</u>.

**2.   <u>Conflict of Interest</u>**.

The Supreme Court addressed in <u>Glenn</u> the questions of what constitutes a conflict of interest, and how the conflict should be taken into account, in an ERISA lawsuit involving a denial of benefits.  The Supreme Court held that a conflict of interest exists when benefits are denied either by a self-funded employer or by an insurer.  128 S. Ct. at 2348-50.  The Court observed that "the employer's own conflict may extend to its selection of an insurance company to administer its plan."  <u>Id</u>. at 2349-50.  The Fifth Circuit has accordingly held that discovery of "the existence and extent of a conflict of interest" is "relevant and thus permissible" in an ERISA action.  <u>Crosby</u>, 647 F.3d at 263; <u>see also</u> <u>Kergosien v. Ocean Energy, Inc.</u>, 390 F.3d 346, 356 (5th Cir. 2004)("[t]here is no practical way for the extent of the administrator's conflict of interest to be determined without the administrator going beyond the record of the administrator").

3.   **Interpreting the Plan or Explaining Medical Terms or Claim Procedures**.

The <u>en banc</u> Fifth Circuit specifically identified three long-accepted areas in which evidence beyond the administrative record is admissible, related to (1) "interpreting the plan," or (2) "explaining medical terms," or (3) "explaining . . . procedures relating to the claim." <u>Vega v. National Life Ins. Servs., Inc.</u>, 188 F.3d 287, 299 (5th Cir. 1999)(<u>en banc</u>).

The Fifth Circuit had earlier held that "a district court is not confined to the administrative record in determining whether, under our analytical framework, a plan administrator abused its discretion in making a benefit determination." <u>Wildbur v. ARCO Chem Co.</u>, 974 F.2d 631, 639 (5th Cir. 1992). The court summarized a number of its earlier rulings, in which it "explained how other evidence, not dealing with the historical facts underlying the benefit determination, and therefore usually not in the administrative record, was relevant." <u>Id</u>. A court may consider, therefore, "evidence beyond the administrative record showing inconsistent plan interpretation by the administrator, as well as evidence relevant to the other elements of our abuse of discretion analysis." <u>Wildbur</u>, 974 F.2d at 642.

IV.  **REQUESTS FOR PRODUCTION**.

The following discussion is organized into two sections. First, VEBC raised meritless objections to, and failed to produce any documents responsive to, Requests 4, 9, 10, 28, 29, 30, 31, 33, 35, 36, and 37. Second, VEBC promised on August 13, 2015 that it "will produce" documents responsive to Requests 5, 6, 12, 14-27,

and 34, yet has failed to produce them after an additional 60 days.

A.    **VEBC's Meritless Objections**.

1.    **Request for Production 4**.

Bruce served on VEBC the following request for production:

> 4.    Any amendment to the "Administrative Services Agreement effective January 1, 2010, Agreement Number MA-003059-2009" (as referenced in the document produced by VEBC as "Verizon/Anthem 00279") subsequent to "Amendment Number Three to Administrative Services Agreement between Verizon Sourcing LLC and Anthem Insurance Companies, Inc. d.b.a. Anthem Blue Cross and Blue Shield" (produced by Anthem as "Anthem 00264" through "Anthem 310"). <u>See</u> 29 U.S.C. § 1024(b)(4); <u>Glenn</u>, 128 S. Ct. at 2349-50; 29 C.F.R. § 2560.503-1(b); <u>Crosby</u>, 647 F.3d at 263.

(Bruce Apx. 4-5.)   VEBC objected on the basis of relevance and overbreadth. (Bruce Apx. 22.)

VEBC's objections are meritless.   The referenced agreement governs Anthem's role as claims administrator.   Any amendment to that agreement is one of the "contract[s], or other instruments under which the plan is . . . operated," 29 U.S.C. § 1024(b)(4), which VEBC was required to furnish upon Bruce's written request, 29 U.S.C. § 1132(c).   Indeed, additional penalties of $110 per day could be imposed for VEBC 's refusal to produce any such amendment. Any such amendment may reveal the extent to which Anthem's procedural violations and unreasonableness were dictated by VEBC, and may reveal a structurally-imposed conflict of interest.

2.    **Request for Production 9**.

Bruce served on VEBC the following request for production:

> 9.    Each contract or other instrument by which Anthem UM Services, Inc. provided utilization review services, or otherwise had any responsibility for handling claims, with respect to Bruce's Claim. <u>See</u> 29 U.S.C. § 1024(b)(4).

(Bruce Apx. 6.)   VEBC objected on the basis of relevance and an unspecified "improper premise."   (Bruce Apx. 23.)

VEBC's objections are meritless.   VEBC has admitted in its amended answer [ECF Doc. 24, at ¶ 5] that "Anthem UM Services, Inc., which is a separate entity, sent [Bruce] correspondence on Anthem's behalf."   The referenced documents would govern any duties that Anthem, as claims administrator, delegated to Anthem UM Services.   Said documents would be among the "contract[s], or other instruments under which the plan is . . . operated," 29 U.S.C. § 1024(b)(4), which VEBC was required to furnish at Bruce's request, 29 U.S.C. § 1132(c), and which could result in additional penalties of $110 per day for VEBC 's refusal to produce them.   Any such documents may reveal the extent to which the procedural violations and unreasonableness were dictated by written requirements, and may reveal a structurally-imposed conflict of interest.

### 3.   <u>Request for Production 10, 28, 29, 30</u>.

Bruce served on VEBC the following requests for production:

> 10.   Each contract or other instrument by which Xerox provided services, or otherwise had any responsibility, with respect to responding to written requests by participants or beneficiaries for plan documents, summary plan descriptions, or other contracts or instruments under which "The Plan for Group Insurance" (produced by VEBC as "Verizon/Anthem 00137" through "Verizon/Anthem 00221") or "The Verizon CHOICES Plan" (produced by VEBC as "Verizon/Anthem 00222" through "Verizon/Anthem 00278") were operated.   <u>See</u> 29 U.S.C. § 1024(b)(4); 29 U.S.C. § 1132(c)(1)(B); <u>Jackson v. Truck Drivers' Union Local 42 Health 7 Welfare Fund</u>, 933 F. Supp. 1124, 1141 (D. Mass. 1996)(VEBC "retains an obligation to oversee and monitor the activities of [its] delegate").
>
> . . .

28. Each contract or other instrument by which Xerox had any responsibility for acting as the "Verizon Benefits Center" between June 20, 2014 and February 4, 2015. See 29 U.S.C. § 1024(b)(4); 29 U.S.C. § 1132(c)(1)(B); Jackson, 933 F. Supp. at 1141.

29. Each contract or other instrument by which Xerox had any responsibility for P. O. Box 8998, Norfolk, VA 23501 between June 20, 2014 and February 4, 2015. See 29 U.S.C. § 1024(b)(4); 29 U.S.C. § 1132(c)(1)(B); Jackson, 933 F. Supp. at 1141.

30. All written instructions and guidelines that governed the services that Xerox provided between June 20, 2014 and February 4, 2015 with respect to responding to written requests by participants or beneficiaries for plan documents, summary plan descriptions, or other contracts or instruments under which "The Plan for Group Insurance" (produced by VEBC as "Verizon/Anthem 00137" through "Verizon/Anthem 00221") or "The Verizon CHOICES Plan" (produced by VEBC as "Verizon/Anthem 00222" through "Verizon/Anthem 00278") were operated. See 29 U.S.C. § 1024(b)(4); 29 U.S.C. § 1132(c)(1)(B); Jackson, 933 F. Supp. at 1141.

(Bruce Apx. 6, 9-10.) VEBC objected to each request on the basis of relevance, overbreadth and an unspecified "improper premise." (Bruce Apx. 23-24, 30-31.)

VEBC stated in response to Request 10 that it "will produce the applicable portions of the contract between Verizon Corporate Services Group, Inc. and Xerox Business Services, LLC ("Xerox"), pursuant to which, in June 20, 2014, Xerox handled and/or responded to requests directed to VEBC for plan documents and summary plan descriptions, among other things." VEBC stated in response to Requests 28, 29 and 30 that it "will produce the applicable portions of" said contract with Xerox. Despite an existing protective order entered at VEBC's request [ECF Doc. 23], VEBC produced no such documents.

VEBC's objections are meritless. VEBC admits that some of

VEBC's statutory duties under 29 U.S.C. § 1024(b)(4) to provide plan documents have been delegated to Xerox. VEBC cannot just "pass the buck" to Xerox. VEBC "retains an obligation to oversee and monitor the activities of [its] delegate." See Jackson v. Truck Drivers' Union Local 42 Health 7 Welfare Fund, 933 F. Supp. 1124, 1141 (D. Mass. 1996). Any failure by VEBC to monitor Xerox would constitute evidence of "deliberate indifference" to its statutory duty to provide documents, and would thus play an important part in an award of penalties. See Lampkins, 1996 WL 729136, at *4. The contract with Xerox will govern the extent to which certain duties have been delegated to Xerox, and the extent to which VEBC monitored the performance by Xerox of such duties.

Moreover, there is no basis for VEBC to disclose only "portions" of the Xerox contract. "The contract must be considered as a whole." See Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132, 133 (Tex. 1994). "Moreover, each part of the contract must be given effect." See id. To disclose only portions of the Xerox contract, therefore, would preclude an accurate interpretation.

### 4. Request for Production 31.

Bruce served on VEBC the following request for production:

> 31. All correspondence or other documents exchanged between VEBC and Xerox regarding any "special attention on how to interpret" requests by participants or beneficiaries for plan documents, summary plan descriptions, or other contracts or instruments, as referenced in Exhibit A hereto (on the page marked "APP. 0507"). See 29 U.S.C. § 1024(b)(4); 29 U.S.C. § 1132(c)(1)(B); Jackson, 933 F. Supp. at 1141.

(Bruce Apx. 10.) VEBC objected on the basis of relevance and an unspecified "improper premise." (Bruce Apx. 31.)

VEBC's objections are meritless.  The referenced Exhibit A is a document filed by VEBC in another lawsuit,[2] and is labeled "Declaration of Robert Zane." (Bruce Apx. 14.)  Mr. Zane averred that, "[s]ince January 1, 2013, Xerox provided certain administrative services for the benefits offered by Verizon Communication, Inc. to its employees." (Id. at ¶ 2.)  Mr. Zane averred that Xerox had received requests for plan documents in connection with the other lawsuit, but had misinterpreted them. (Bruce Apx. 14 at ¶ 3.)  He attached an email discussing the "special attention on how to interpret these requests more accurately in the future." (Bruce Apx. 16.)

Bruce has merely requested the correspondence or other documents exchanged between VEBC and Xerox regarding any "special attention on how to interpret" such requests.  Again, VEBC "retains an obligation to oversee and monitor the activities of [its] delegate." See Jackson, 933 F. Supp. at 1141.  Any failure by VEBC to monitor Xerox, particularly after at least one similar error by Xerox, would constitute evidence of "deliberate indifference" to its statutory duty to provide documents and play an important part in an award of penalties.  See Lampkins, 1996 WL 729136, at *4.

### 5.    **Request for Production 33**.

Bruce served on VEBC the following request for production:

> 33.  All correspondence or other documents exchanged between VEBC and any attorney (or representative thereof)

---

[2] VEBC filed said document on April 10, 2015 in a lawsuit pending against VEBC in the U.S. District Court for the Northern District of Texas, Dallas Division, Cause No. 3:14-CV-0086-P, where it was designated as ECF Doc. 83-1.

> prior to February 4, 2015 concerning any request by Bruce (through her attorney) for plan documents, summary plan descriptions, or other contracts or instruments under which was operated any plan governing Bruce's Claim.  <u>See</u> 29 U.S.C. § 1024(b)(4); 29 U.S.C. § 1132(c)(1)(B).

(Bruce Apx. 11.)  VEBC objected on the basis of relevance and "to the extent" of "applicable privileges." (Bruce Apx. 32.)  VEBC did not comply with Rule 26(b)(5)(A)(2) as to any privileges.

VEBC's objections are meritless.  It is certainly relevant whether VEBC communicated with an attorney regarding Bruce's requests, such as to explore the extent of it statutory duties under 29 U.S.C. § 1024(b)(4) to provide documents, or to deliberately ignore such duties, and would thus play an important part in an award of penalties.  <u>See</u> <u>Lampkins</u>, 1996 WL 729136, at *4.  Bruce filed suit on February 4, 2015, and expressly requested documents exchanged before that date, avoiding any overbreadth.

Moreover, Bruce expressly notified VEBC in Instruction 4:

> When an attorney advises a plan administrator or other fiduciary concerning plan administration, the attorney's clients are the plan beneficiaries for whom the fiduciary acts, not the plan administrator. . . . Therefore, an ERISA fiduciary cannot assert the attorney-client privilege against a plan beneficiary about legal advice dealing with plan administration.

(Bruce Apx. 2, quoting <u>Wildbur v. ARCO Chem. Co.</u>, 974 F.2d 631, 645 (5th Cir. 1992).)  Request 33 pertains to VEBC's duties under 29 U.S.C. § 1024(b)(4).  Those duties arise from VEBC's role as plan administrator.  VEBC "cannot assert the attorney-client privilege against a plan beneficiary about legal advice dealing with plan administration."  <u>See</u> <u>Wildbur</u>, 974 F.2d at 645.

6.   <u>**Requests for Production 35, 36, 37**</u>.

Bruce served on VEBC the following requests for production:

35.   All correspondence, guidelines, policies, procedures, forms, manuals and other written instructions that governed any involvement by VEBC in the handling of Bruce's Claim.   <u>See</u> 29 C.F.R. § 2560.503-1(b); <u>Crosby</u>, 647 F.3d at 263 (discovery of "whether the administrator complied with ERISA's procedural regulations; and the existence and extent of a conflict of interest" is "relevant and thus permissible").

36.   All correspondence, guidelines, policies, procedures, forms, manuals and other written instructions that governed VEBC's role as a fiduciary with respect to any involvement it had in handling Bruce's Claim.   <u>See</u> 29 U.S.C. § 1002(21)(A) (fiduciaries are those with "any discretionary authority or discretionary responsibility in the administration" of the ERISA plan); 29 C.F.R. § 2560.503-1(b); <u>Crosby</u>, 647 F.3d at 263 (discovery of "whether the administrator complied with ERISA's procedural regulations; and the existence and extent of a conflict of interest" is "relevant and thus permissible").

37.   If not already produced in response to the foregoing, all correspondence or other written communication (including any transmitted electronically) that was created or received in connection with Bruce's Claim prior to February 4, 2015 and that was between VEBC and any of the following:

a.   Bruce;

b.   Any other person within VEBC;

c.   Anthem; or

d.   Verizon.

<u>See</u> 29 C.F.R. § 2560.503-1(m)(8)(ii); <u>Crosby</u>, 647 F.3d at 263.

(Bruce Apx. 11-12.)   VEBC objected to all three requests on the basis of relevance and overbreadth, and to Request 35 on the basis of an "improper premise."   (Bruce Apx. 33-34.)

VEBC's objections are meritless.   Each request is expressly

limited to the scope of Bruce's claim, so seeks documents relevant to that claim, and only relevant documents.

**B.    VEBC's Failed Promises to Produce Responsive Documents**.

VEBC has failed to satisfy its promise that it "will produce" (Bruce Apx. 22, 24-29, 32) documents responsive to the following:

    5.    The "selection criteria" for the "Identified Members," as referenced on page 27 of "Amendment Number Three to Administrative Services Agreement between Verizon Sourcing LLC and Anthem Insurance Companies, Inc. d.b.a. Anthem Blue Cross and Blue Shield" (produced by VEBC as "Verizon/Anthem 00305"). See 29 U.S.C. § 1024(b)(4); Glenn, 128 S. Ct. at 2349-50; 29 C.F.R. § 2560.503-1(b); Crosby, 647 F.3d at 263.

    6.    "Anthem's criteria" for the "Elective Spine Surgeries," as referenced on page 32 of "Amendment Number Three to Administrative Services Agreement between Verizon Sourcing LLC and Anthem Insurance Companies, Inc. d.b.a. Anthem Blue Cross and Blue Shield" (produced by VEBC as "Verizon/Anthem 00310"). See 29 U.S.C. § 1024(b)(4); Glenn, 128 S. Ct. at 2349-50; 29 C.F.R. § 2560.503-1(b); Crosby, 647 F.3d at 263.

    . . .

    12.    All correspondence or other documents exchanged between VEBC and Xerox concerning the letter referenced above in Request 11. See 29 U.S.C. § 1024(b)(4); 29 U.S.C. § 1132(c)(1)(B); Jackson, 933 F. Supp. at 1141.

    . . .

    14.    All correspondence or other documents exchanged between VEBC and Xerox concerning the letter referenced above in Request 13.[3] See 29 U.S.C. § 1024(b)(4); 29 U.S.C. § 1132(c)(1)(B); Jackson, 933 F. Supp. at 1141.

    15.    The email dated September 9, 2014 by which

---

[3]
The referenced request is as follows:

    13.    The letter dated August 30, 2014 by which Bruce (through her attorney) reminded VEBC of her request for certain documents (as referenced in paragraph 63 of the Complaint and Answer). See 29 U.S.C. § 1024(b)(4); 29 U.S.C. § 1132(c)(1)(B); Jackson, 933 F. Supp. at 1141.

Xerox (referencing itself as the "Verizon Benefit Center") provided certain documents to Bruce (through her attorney)(as referenced in paragraph 64 of the Complaint and Answer).  <u>See</u> 29 U.S.C. § 1024(b)(4); 29 U.S.C. § 1132(c)(1)(B); <u>Jackson</u>, 933 F. Supp. at 1141.

16.  All correspondence or other documents exchanged between VEBC and Xerox concerning the email referenced above in Request 15.  <u>See</u> 29 U.S.C. § 1024(b)(4); 29 U.S.C. § 1132(c)(1)(B); <u>Jackson</u>, 933 F. Supp. at 1141.

17.  The email dated September 9, 2014 by which Bruce (through her attorney) advised Xerox (referencing itself as the "Verizon Benefit Center") of the documents that VEBC had failed to provide (as referenced in paragraph 69 of the Complaint and Answer).  <u>See</u> 29 U.S.C. § 1024(b)(4); 29 U.S.C. § 1132(c)(1)(B); <u>Jackson</u>, 933 F. Supp. at 1141.

18.  All correspondence or other documents exchanged between VEBC and Xerox concerning the email referenced above in Request 17.  <u>See</u> 29 U.S.C. § 1024(b)(4); 29 U.S.C. § 1132(c)(1)(B); <u>Jackson</u>, 933 F. Supp. at 1141.

19.  The email dated September 9, 2014 by which Xerox (referencing itself as the "Verizon Benefit Center") advised Bruce (through her attorney) that Xerox would "get the documents" that Bruce had requested (as referenced in paragraph 69 of the Complaint and Answer).  <u>See</u> 29 U.S.C. § 1024(b)(4); 29 U.S.C. § 1132(c)(1)(B); <u>Jackson</u>, 933 F. Supp. at 1141.

20.  All correspondence or other documents exchanged between VEBC and Xerox concerning the email referenced above in Request 19.  <u>See</u> 29 U.S.C. § 1024(b)(4); 29 U.S.C. § 1132(c)(1)(B); <u>Jackson</u>, 933 F. Supp. at 1141.

21.  The email dated October 2, 2014 by which Bruce (through her attorney) reminded Xerox (referencing itself as the "Verizon Benefit Center") of the documents that VEBC had failed to provide (as referenced in paragraph 70 of the Complaint and Answer).  <u>See</u> 29 U.S.C. § 1024(b)(4); 29 U.S.C. § 1132(c)(1)(B); <u>Jackson</u>, 933 F. Supp. at 1141.

22.  All correspondence or other documents exchanged between VEBC and Xerox concerning the email referenced above in Request 21.  <u>See</u> 29 U.S.C. § 1024(b)(4); 29 U.S.C. § 1132(c)(1)(B); <u>Jackson</u>, 933 F. Supp. at 1141.

23.  The email dated October 9, 2014 by which Bruce (through her attorney) reminded Xerox (referencing itself

as the "Verizon Benefit Center") of the documents that
VEBC had failed to provide (as referenced in paragraph 70
of the Complaint and Answer). <u>See</u> 29 U.S.C. §
1024(b)(4); 29 U.S.C. § 1132(c)(1)(B); <u>Jackson</u>, 933 F.
Supp. at 1141.

   24. All correspondence or other documents exchanged
between VEBC and Xerox concerning the email referenced
above in Request 23. <u>See</u> 29 U.S.C. § 1024(b)(4); 29
U.S.C. § 1132(c)(1)(B); <u>Jackson</u>, 933 F. Supp. at 1141.

   25. All correspondence or other documents exchanged
between VEBC and Bruce (through her attorney) between
June 20, 2014 and February 4, 2015. <u>See</u> 29 U.S.C. §
1024(b)(4); 29 U.S.C. § 1132(c)(1)(B); <u>Jackson</u>, 933 F.
Supp. at 1141.

   26. All correspondence or other documents exchanged
between Xerox and Bruce (through her attorney) between
June 20, 2014 and February 4, 2015. <u>See</u> 29 U.S.C. §
1024(b)(4); 29 U.S.C. § 1132(c)(1)(B); <u>Jackson</u>, 933 F.
Supp. at 1141.

   27. All correspondence or other documents exchanged
between VEBC and Xerox between June 20, 2014 and February
4, 2015 concerning any request by Bruce (through her
attorney) for plan documents, summary plan descriptions,
or other contracts or instruments under which was
operated any plan governing Bruce's Claim. <u>See</u> 29 U.S.C.
§ 1024(b)(4); 29 U.S.C. § 1132(c)(1)(B); <u>Jackson</u>, 933 F.
Supp. at 1141.

   . . .

   34. All correspondence or other documents exchanged
between VEBC and any attorney (or representative thereof)
prior to February 4, 2015 concerning Bruce's Claim. <u>See</u>
29 U.S.C. § 1024(b)(4); 29 U.S.C. § 1132(c)(1)(B).

(Bruce Apx. 5-9, 11.)  Although VEBC also objected to each request

on the basis of relevance, which objections are meritless, VEBC's

promise to produce renders such objections moot.  What remains is

VEBC's sandbagging until the Court enters an order.

   C.   <u>**Relief Requested**</u>.

   Under Rule 37(a)(3)(B)(iv), Bruce asks the Court to overrule

VEBC's objections and compel VEBC to fully respond to Requests 4-6,

9-10, 12, 14-31, and 33-37, and produce all responsive documents.

**V.    INTERROGATORY.**

   **A.    Bruce's Interrogatory and VEBC's Meritless Objections.**

   Bruce served the following interrogatory on VEBC:

>      3. Explain why VEBC lacked "knowledge or information sufficient to form a belief about the truth of the allegation" in paragraphs 62, 64, 69, 70 of the Answer, including any difficulty in communicating with, or obtaining information from, Xerox.

(Bruce Apx. 36.)   The referenced paragraphs of the Complaint alleged all pertain to Bruce's requests to VEBC for certain plan documents, and VEBC's failure to provide them, as discussed in section II above.   VEBC objected to Interrogatory 3 on the basis of relevance and "to the extent" of "applicable privileges."   (Bruce Apx. 41.)   VEBC did not comply with Rule 26(b)(5)(A)(2) as to any alleged "privileges."

   VEBC's objections are meritless.   Again, VEBC "retains an obligation to oversee and monitor the activities of [its] delegate."   See Jackson, 933 F. Supp. at 1141.   Any failure by VEBC to monitor Xerox, particularly after at least one similar error by Xerox, would constitute evidence of "deliberate indifference" to its statutory duty to provide documents, and would thus play an important part in an award of penalties.   See Lampkins, 1996 WL 729136, at *4.   The extent to which VEBC did or did not monitor the efforts of Xerox, before Bruce filed suit on February 4, 2015, to respond to Bruce's requested for plan documents is certainly relevant.   Moreover, VEBC "cannot assert the attorney-client privilege against a plan beneficiary about legal advice dealing

with plan administration." <u>See</u> <u>Wildbur</u>, 974 F.2d at 645.

**B.   <u>Relief Requested</u>.**

Rule 33(a)(2) expressly allows interrogatories concerning a "contention that relates to fact or the application of law to fact." Rule 37(a)(3)(B)(iii) specifically allows a motion to compel answers to interrogatories. The Court may take action to simplify the issues, to eliminate frivolous defenses, and to avoid unnecessary proof. Fed. R. Civ. P. 16(c)(2)(A), (D). Compelling VEBC to state the basis for asserting a lack of information concerning the allegations in paragraphs 62, 64, 69 and 70 of the Complaint would serve those purposes. Bruce accordingly asks the Court to compel VEBC to fully answer Interrogatory 3.

**VI.   <u>REQUESTS FOR ADMISSION</u>.**

Rule 16(c)(2)(C) encourages "obtaining admissions and stipulations about facts . . . to avoid unnecessary proof." Bruce served a number of requests for admission in an attempt to narrow the issues to the point (or nearly so) that they could be submitted to the Court on agreed facts, but with the parties submitting their presumably-opposing legal arguments.

VEBC has raised numerous meritless objections to Requests 22, 23, 27, 29, 35, 72, 77, 78, 82, and 83. VEBC's avoidance of the those admissions seems to have no purpose other than to put Bruce to the burden of presenting the "unnecessary proof" discouraged by Rule 16(c)(2)(C). VEBC's objections are discussed below.

A.   **VEBC's Meritless Objections**.

1.   **Requests for Admission 22, 23**.

Bruce served on VEBC the following requests for admission:

> 22.  In response to the request from Bruce (through her attorney) to VEBC by letter dated June 20, 2014 (as referenced in paragraph 61 of the Complaint and Answer), VEBC did not provide to Bruce (through her attorney) by February 4, 2015 a copy of any summary plan description that would have applied to Bruce's Claim prior to January 1, 2014.

> 23.  In response to the request from Bruce (through her attorney) to VEBC by letter dated June 20, 2014 (as referenced in paragraph 61 of the Complaint and Answer), VEBC did not provide to Bruce (through her attorney) by February 4, 2015 a copy of any summary of coverage applicable to Bruce's Claim.

(Bruce Apx. 45.)   VEBC objected to each request on the basis of relevance and an "improper premise," and that each request was "compound" in some unspecified fashion.   (Bruce Apx. 60.)

VEBC's objections are meritless.   Each request directly addresses VEBC's failure to produce certain requested plan documents applicable to her surgery on November 5, 2013.   Those matters are specifically pleaded in the Complaint, so are "relevant to [Bruce's] claim."   Fed. R. Civ. P. 26(b)(1).

VEBC also references documents "effective January 1, 2014." (Bruce Apx. 60.)   Such references to a document that became effective only _after_ the surgery in question are simply nonresponsive.

2.   **Requests for Admission 27, 29**.

Bruce served on VEBC the following requests for admission:

> 27.  Prior to March 2, 2015, VEBC did not provide to Bruce (through her attorney) a copy of "The Plan for Group Insurance"   (later produced as "Verizon/Anthem

**PLAINTIFF'S MOTION TO COMPEL DISCOVERY FROM DEFENDANTS – Page 21**

00137" through "Verizon/Anthem 00221").

. . .

       29.  Prior to March 3, 2015, VEBC did not provide to Bruce (through her attorney) a copy of "The Verizon CHOICES Plan" (later produced as "Verizon/Anthem 00222" through "Verizon/Anthem 00278").

(Bruce Apx. 46.)  VEBC objected to each request on the basis of relevance and an "improper premise," and that each request was "compound" in some unspecified fashion.  (Bruce Apx. 61-62.)

VEBC's objections are meritless.  Each request directly addresses VEBC's failure to produce certain requested plan documents, as specifically pleaded in the Complaint, and as "relevant to [Bruce's] claim."  Fed. R. Civ. P. 26(b)(1).

VEBC also references unspecified "summary plan description and/or summary of coverage."  (Bruce Apx. 61-62.)  Such references to a document <u>other</u> that the documents about which Requests 27 and 29 specifically inquire are simply nonresponsive.

     3.   **Request for Admission 35**.

Bruce served on VEBC the following requests for admission:

       35.[4] The document that VEBC (through its attorney) provided to Bruce (through her attorney) by letter dated June 4, 2015 (produced as "Verizon/Anthem 00311" through "Verizon/Anthem 00389") describes certain medical benefits available "as of January 1, 2011," as stated on page 1 thereof (produced as "Verizon/Anthem 00315").

(Bruce Apx. 48.)  VEBC objected to this request on the basis that it was "compound" in some unspecified fashion, and that the "document speaks for itself."  (Bruce Apx. 63.)

---

    [4]

This request is the second of two requests that, erroneously, were both designated as Request 35.

VEBC's objection is meritless.  One court characterized as "folklore" the "favorite excuse" of answering that "the document speaks for itself."  See House v. Giant of Maryland, LLC, 232 F.R.D. 257, 262 (E.D. Va. 2005).

### 4.  Request for Admission 72.

Bruce served on VEBC the following request for admission:

> 72.  Prior to June 4, 2015, Xerox did not provide to Bruce (through her attorney) a copy of the document that VEBC (through its attorney) provided to Bruce (through her attorney) by letter dated June 4, 2015 (produced as "Verizon/Anthem 00311" through "Verizon/Anthem 00389").

(Bruce Apx. 49.)  VEBC objected on the basis of relevance, and that the request was "compound" and "vague and/or ambiguous" in some unspecified fashion.  (Bruce Apx. 64.)

VEBC's objections are meritless.  The request specifically identifies the summary plan description applicable to Bruce's claim in the manner in which VEBC finally produced it almost a year after Bruce requested it.  Bruce's requests (and the penalties accruing at $110 per day while VEBC refused to produce it) are specifically pleaded in the Complaint, and are "relevant to [Bruce's] claim." Fed. R. Civ. P. 26(b)(1).

### 5.  Requests for Admission 77, 78.

Bruce served on VEBC the following requests for admission:

> 77.  On April 10, 2015, VEBC (through its attorney) filed a Declaration of Robert Zane [ECF Doc. 83-1] in a lawsuit pending against VEBC in the U.S. District Court for the Northern District of Texas, Dallas Division, Cause No. 3:14-CV-0086-P.

> 78.  Attached hereto as Exhibit A is a true copy of a Declaration of Robert Zane [ECF Doc. 83-1] that VEBC (through its attorney) filed on April 10, 2015 in a lawsuit pending against VEBC in the U.S. District

for the Northern District of Texas, Dallas Division,
Cause No. 3:14-CV-0086-P.

(Bruce Apx. 49-50.)  VEBC objected to both requests on the basis of
relevance, and that Request 78 was "compound and unintelligible" in
some unspecified fashion.  (Bruce Apx. 65.)

VEBC's objections are meritless.  VEBC filed Mr. Zane's
declaration in another case, so cannot credibly claim to not
understand these requests.  Attached to Mr. Zane's declaration is
an email discussing the "special attention on how to interpret
these requests more accurately in the future."  (Bruce Apx. 56.)
Again, VEBC "retains an obligation to oversee and monitor the
activities of [its] delegate."  See Jackson, 933 F. Supp. at 1141.
Any failure by VEBC to monitor Xerox, particularly after at least
one similar error by Xerox, would constitute evidence of
"deliberate indifference" to its statutory duty to provide
documents, and would thus play an important part in an award of
penalties.  See Lampkins, 1996 WL 729136, at *4.

     **6.   Requests for Admission 82, 83**.

Bruce served on VEBC the following requests for admission:

> 82.  VEBC maintained control over P. O. Box 8998,
> Norfolk, VA 23501 between June 23, 2014 and September 2,
> 2014.

> 83.  Xerox maintained control over P. O. Box 8998,
> Norfolk, VA 23501 between June 23, 2014 and September 2,
> 2014.

(Bruce Apx. 51.)  VEBC objected on the basis that the requests were
"vague and/or ambiguous" in some fashion.  (Bruce Apx. 66-67.)

VEBC's objections are meritless.  Bruce has pleaded that she
requested by letter dated June 20, 2014 that VEBC provide certain

plan documents, and that the letter was delivered on June 23, 2014. VEBc produced a copy of said letter (with enclosure and envelope) on July 17, 2015 as "Verizon/Anthem 00509" through "Verizon/Anthem 00512." (Bruce Apx. 68-71.) The letter was addressed to P. O. Box 8998, Norfolk, VA 23501.  VEBC cannot credibly claim to not recognize this P.O. Box, or to not know the extent to which it was under the control of VEBC or Xerox.

B.    **Relief Requested**.

Rule 37(a)(4) deems VEBC's evasive responses to constitute a failure to respond.  Rule 36(a)(6) allows the Court to "order either that the matter is admitted or that an amended answer be served."

Given that VEBC has failed to admit matters from its own documents with which it is very familiar, despite abundant time for consideration, Bruce urges the Court to order Request 22, 23, 27, 29, 35, 72, 77, 78, 82, and 83 admitted.  In the alternative, Bruce asks the Court to overrule VEBC's objections and to order VEBC to serve full responses to those requests.

WHEREFORE, PREMISES CONSIDERED, Bruce prays that the Court overrule VEBC's objections to the discovery requests discussed above, and order full responses by a date certain to the discovery requests discussed above, and for such other and further relief to which she may be justly entitled.

Respectfully submitted,

/s/James L. Johnson
James L. Johnson
Texas Bar No. 10742020

THE JOHNSON LAW FIRM
6500 Greenville Avenue
Suite 345
Dallas, Texas  75206
Telephone:    214/363-1629
Telecopier:   214/363-9173

ATTORNEY FOR PLAINTIFF
HEIDI BRUCE

### CERTIFICATE OF CONFERENCE

I hereby certify that on September 25, 2015, I sent an email to Blaire Johnson, counsel for VEBC, notifying her of VEBC's specific responses to Bruce's discovery requests that were deficient, and asked when she could confer to determine whether agreement could be reached on those requests pursuant to Local Rule 7.1(b)(2).  Ms. Johnson selected a time on October 5 for the conference. At that time, I telephoned Ms. Johnson to confer.  She stated only that she "will look at" the first few requests, then unilaterally terminated the call (over my vocal objections) without discussing the many requests that remained.  Agreement could not be reached, so this motion is submitted to the Court for its determination.

/s/ James L. Johnson
James L. Johnson

### CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2015, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to all of Defendants' attorneys of record who have consented to accept this Notice as service of this document by electronic means.

/s/ James L. Johnson
James L. Johnson